**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Manuel de Jesus Garcia-Lopez,<br><br>                Defendant. | No. CR-13-01609-001-PHX-NVW<br><br>**ORDER** |

        Before the court is Defendant Manuel de Jesus Garcia-Lopez's Motion to Suppress (Doc. 51). For the reasons that follow, the Motion will be denied.

        On December 20, 2012, Special Agent Christian Murphy of Homeland Security Investigations (HSI) submitted a warrant application and accompanying affidavit to Yuma County Superior Court Judge David Haws. (Doc. 52-1 at 11.) Ten days previously, as part of an ongoing drug trafficking investigation, Yuma County Superior Court Judge John Nelson had authorized the interception of a telephone, labeled Target Telephone 1 ("TT 1"), that belonged to "an individual known only as LALO." (*Id.* at 5.) HSI intercepted a call between TT 1 and an unknown number, 128*748*9117, on December 11, 2012. (*Id.*) As authorized by Judge Nelson's order, HSI began signal tracking of the unidentified number, which they designated Target Telephone 3 ("TT 3"). (*Id.*; Doc. 68 at 2.) According to Sprint subscriber records, the TT 3 number belonged to someone named Mayte Pablo and was registered at an Irvine, California, address that HSI

described as "a default address used by Sprint when the subscriber does not provide an address." (Doc. 52-1 at 5.)

Signal tracking revealed that TT 3 was in Yuma in the late morning of December 13, 2012. (*Id.*) HSI agents who drove by the phone's location, at 3443 W. 21st Place, noticed a 2008 Chevrolet Silverado pickup truck parked in the driveway, as well as "an older Hispanic male, dressed in a western style shirt and a cowboy hat." (*Id.*) Based on the truck's license plate number, HSI determined the truck was registered to Garcia-Lopez and that it "had crossed through the San Luis, AZ Port of Entry (POE) at 10:10 that morning, being driven by [Garcia-Lopez]." (*Id.*) Signal tracking data from 10:04 a.m. and 10:46 a.m. suggested Garcia-Lopez's crossing "match[ed] the movement of the telephone." (*Id.*)

Around 2:30 that afternoon, a 1998 Jeep Grand Cherokee, which a records check revealed belonged to Garcia-Lopez's son, Hipolito Lopez, arrived at the West 21st Place address. (*Id.* at 6.) Shortly thereafter, the Jeep and the Chevrolet Silverado, driven by the man in the cowboy hat, departed together. (*Id.*) Agents trailed the two vehicles to a nearby Wal-Mart; signal tracking "appeared to show that the phone was located with the Silverado." (*Id.*) Agents followed the two drivers into the Wal-Mart, where they matched the man in the cowboy hat to mug shots of Garcia-Lopez. (*Id.*) While the man in the cowboy hat was in the store, HSI intercepted a conversation on TT 1 in which the owner of TT 3 said he was at Wal-Mart. (*Id.*)

On December 20, 2012, agents intercepted a call between TT 3, which they now concluded belonged to Garcia-Lopez, and TT 1. (*Id.*) On that call, Garcia-Lopez "stated that he would be going to Yuma to 'package the beans' because he ha[d] not been able to 'take them out.'" (*Id.*) According to Special Agent Murphy, who has experience in drug trafficking investigations, "when [Garcia-Lopez] states that he is going to Yuma to 'package the beans' he is referring to illegal drugs" and "when [Garcia-Lopez] says that he has not been able to 'take them out,' he is saying that he has not been able to sell the drugs or move them to another stash location." (*Id.* at 6-7). Garcia-Lopez also said

1 during the call that "'they must have grown there because they got wet,'" and "if not he
2 will give it to Ramiron, because he doesn't want to struggle with 'that.'" (*Id.* at 6).
3 Special Agent Murphy interpreted these statements to mean Garcia-Lopez was "saying
4 that the illegal drugs got wet in their stash location during recent rain storms in Yuma
5 County" and "if [Garcia-Lopez] can't get a buyer for the illegal drugs he is going to give
6 to Ramiron to sell or store because he is tired of dealing with the illegal drugs." (*Id.* at 7.)

On the basis of Special Agent Murphy's affidavit, Judge Haws authorized HSI to install a GPS tracking device on Garcia-Lopez's Chevrolet Silverado for ninety days. Garcia-Lopez now moves to suppress any evidence obtained from that GPS device, claiming Special Agent's Murphy's affidavit did not provide probable cause to believe Garcia-Lopez had committed or was committing a crime.

Under the Fourth Amendment, "a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there. Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* When a defendant seeks to exclude evidence on the grounds that a search warrant was not supported by probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* (alterations in original). The Ninth Circuit has "reiterated the Supreme Court's directive that a magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.*

Here, Special Agent Murphy's affidavit contained sufficient information to justify a finding of probable cause. Using records lawfully obtained from the phone company, the motor vehicles department, and the San Luis Port of Entry, HSI determined that

- 3 -

someone driving Garcia-Lopez's car spoke over the phone with the target of an ongoing drug investigation. An in-person identification confirmed that person was Garcia-Lopez. Several days later, Garcia-Lopez again spoke over the phone with Lalo, the target of HSI's investigation. He employed somewhat cryptic language—for example, "package the beans"—that an experienced drug trafficking investigator believed to be code for drug transactions. By itself, this language does not prove Garcia-Lopez was engaged in criminal conduct; "packag[ing] the beans" could well refer to perfectly innocuous activity. But Special Agent Murphy's interpretation provides some basis for a magistrate to conclude that evidence of a crime could be obtained by tracking Defendant's vehicle. *See United States v. McCain*, 271 F. Supp. 2d 1187, 1195 (N.D. Cal. 2003) ("[T]here is no inherent harm in an affiant announcing conclusions about the content of coded conversations based on his experience in law enforcement."). And when seeking a warrant, law enforcement must show only that there is a "fair probability" that evidence will be found in the place to be searched.

The standard for probable cause is a low one, and a magistrate's finding of probable cause is entitled to "great deference." In the context of a larger drug trafficking investigation, Garcia-Lopez's statements to Lalo could establish the requisite "fair probability" that HSI would find evidence of a crime by tracking Garcia-Lopez's car. The Superior Court did not err in determining that Special Agent Murphy's affidavit provided probable cause.

IT IS THEREFORE ORDERED that Defendant Manuel de Jesus Garcia-Lopez's Motion to Suppress (Doc. 51) is denied.

Dated this 6th day of May, 2015.

_____
Neil V. Wake
United States District Judge